UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-----------------------------------------------------------------X
In Re:

ADELINE OLMER SANTIAGO AKA ADELINE M. OLMER,

Debtor.
-----------------------------------------------------------------X

Case No. 17-22226-rdd

Chapter 11

**NOTICE OF MOTION**

Upon the annexed affirmation of Jenelle C. Arnold, Esq., dated October 29, 2018 and the

exhibits annexed thereto, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not

individually but as trustee for Hilldale Trust, a secured creditor, will move this court before the

Hon. Judge Honorable Robert D. Drain, United States Bankruptcy Judge, on the 24th day of

January, 2019 at 10:00 AM in the forenoon of that day, or as soon thereafter as counsel may be

heard, at the courthouse located at 300 Quarropas Street, Room 248, White Plains, NY 10601 for

an order pursuant to 362(d)(1) and (2), of the Bankruptcy Code modifying the automatic stay so

that Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as

trustee for Hilldale Trust, as secured creditor, can foreclose the mortgage it holds on the premises

known as 353 Sleepy Hollow Road, Briarcliff Manor, New York 10510-2138, on the grounds

that (a) Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as

trustee for Hilldale Trust is not adequately protected; (b) Debtor has little or no equity in said

premises. Debtor has failed to make post-petition payments and (c) for such other and further

relief as this Court deems just and proper.

Dated: October 29, 2018

Respectfully submitted,

/s/ Jenelle C. Arnold
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Movant
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

TO:

Adeline Olmer Santiago
353 Sleepy Hollow Rd
Briarcliff, NY 10510-2138

J. Mark Santiago
353 Sleepy Hollow Rd
Briarcliff, NY 10510-2138

H. Bruce Bronson, Jr.
Bronson Law Offices, P.C.
480 Mamaroneck Avenue
Harrison, NY 10528-0023
ecf@bronsonlaw.net

Department of Justice
Southern District of New York (White Plains)
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

Largest Creditors:
Citibankna
PO Box 769006
San Antonio, TX 78245-9006

ConEdison
Cooper Station
New York, NY 10276

Eliza Pertz
9 Hidden Green Ln
Larchmont, NY 10538-1117

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Lisa Martinez
2927 Scott Pl
Bronx, NY 10465-2315

Nancy Duddy
PO Box 1173
Monroe, NY 10949-8173

NYS Dept of Tax and Finance
Bankruptcy Section
Albany, NY 12205

Verizon
PO Box 4003
Acworth, GA 30101-9004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------------X       Case No. 17-22226-rdd

In Re:

                                                     Chapter 11

ADELINE OLMER SANTIAGO AND ADELINE M. OLMER,

                  Debtor.

---------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust, ("Creditor") hereby moves this Court, pursuant to 11 U.S.C. § 362(d)(1) and (2) for relief from the automatic stay with respect to certain real property of the Debtor having an address of 353 Sleepy Hollow Road, Briarcliff Manor, New York 10510-2138 (the "Property"), for all purposes allowed by law, the Note (defined below), the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose. In accordance with the local Guide to Default Procedures a cover sheet has been filed contemporaneously herewith. Attached hereto as Exhibit 1 is a background information form required by local rules. In further support of this Motion, Creditor respectfully states:

      1.     A petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on February 14, 2017.

      2.     On July 23, 2004, J. Mark Santiago and Adeline Olmer Santiago (the "Borrowers") executed a promissory Note in the principal sum of $1,450,000.00 (the "First Note"). (Exhibit 2). The First Note is secured by a mortgage (the "First Mortgage") encumbering the Property. (Exhibit 3).

      3.     On July 21, 2006, J. Mark Santiago executed a promissory Note in the principal sum of $1,460,000.00 (the "Second Note"). (Exhibit 4). The Second Note is secured by a

mortgage (the "Second Mortgage") encumbering the Property. (Exhibit 5).

4.     On July 21, 2006, J. Mark Santiago executed a promissory Note in the principal sum of $10,000.00 (the "Third Note"). (Exhibit 6). The Third Note is secured by a second mortgage (the "Third Mortgage") encumbering the Property. (Exhibit 7).

5.     On July 21, 2006, J. Mark Santiago executed a Consolidation, Extension, and Modification Agreement (the "Combined Note"), which combined the Notes encumbering the Property. (Exhibit 8).

6.     All rights and remedies under the Mortgage(s) have been assigned to the Creditor pursuant to that certain assignment of Mortgage, a copy of which is attached hereto as Exhibit 7.

7.     The legal description of the Property and recording information is set forth in the Mortgage, a copy of which is attached hereto, and such description and information is incorporated and made a part hereof by reference.

8.     As of September 26, 2018 the outstanding amount of the Obligations less any partial payments or suspense balance is $2,384,558.69.

9.     The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor as of September 26, 2018:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 17 | 4/1/2010 | 8/1/2011 | $7,600.86 | $129,214.62 |
| 12 | 9/1/2011 | 8/1/2012 | $6,920.47 | $83,045.64 |
| 12 | 9/1/2012 | 8/1/2013 | $7,198.42 | $86,381.04 |
| 12 | 9/1/2013 | 8/1/2014 | $6,842.17 | $82,106.04 |
| 12 | 9/1/2014 | 8/1/2015 | $6,758.08 | $81,096.96 |
| 12 | 9/1/2015 | 8/1/2016 | $6,919.99 | $83,039.88 |
| 11 | 9/1/2016 | 7/1/2017 | $7,236.45 | $79,600.95 |
| 1 | 8/1/2017 | 8/1/2017 | $12,471.67 | $12,471.67 |
| 6 | 9/1/2017 | 2/1/2018 | $12,782.02 | $76,692.12 |
| 6 | 3/1/2018 | 8/1/2018 | $12,823.32 | $76,939.92 |
| 1 | 9/1/2018 | 9/1/2018 | $13,436.59 | $13,436.59 |
| Less partial payments (suspense balance): | | | | ($ 0.00) |
| Total: | | | | $804,025.43 |

10.     The estimated market value of the Property is $1,600,000.00. The basis for such valuation is Debtor(s) Bankruptcy Schedules A & D, attached hereto as Exhibit 8.

11.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Creditor, is $2,384,558.69.

12.     The debtor was participating in the Court Ordered Loss Mitigation program, and was denied a modification on November 21, 2017. Thereafter, Debtor's counsel indicated his client would submit a new loss mitigation package. To date, a loss mitigation package has not been received and on March 21, 2018, Creditor filed a Request for Termination of Loss Mitigation. **On May 29, 2018, the Court entered an Order Terminating the Loss Mitigation Program**. During this time, Creditor has not received ongoing post-petition payments, or any response from Debtor's counsel regarding loss mitigation. Debtor is required to make ongoing payments while loss mitigation is pending.

13.     Debtor's Counsel has failed to file Monthly Operating Reports since September, 2017. Debtor has yet to file a Chapter 11 Plan or Disclosure Statement.

1.     Cause exists for relief from the automatic stay for the following reasons:

(a.) Pursuant to 11 U.S.C. § 362(d)(1), Creditor's interest in the Property is not adequately protected. **The Debtors have failed to make (102) contractual payments** owed under the Note. As a result, Creditor is not adequately protected and relief is appropriate under § 362(d)(1).

(b.) Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtors have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization. Creditor's interest in the collateral is not protected by an adequate equity cushion. Further, pursuant to the Debtors' bankruptcy petition, the Property is the Debtor's principal residence. (Dkt. No. 1). The Property does not produce income or provide any benefit to the estate. The parties participated in the court ordered MMM Program, which failed to result in an agreement to modify the Loan. (*See* Dkt. 32). As the Property is the Debtors' principal residence, the

Debtors are prohibited from modifying Creditor's claim in their proposed Chapter 11 Plan. 11 U.S.C. §1123(b)(5). As a result, the Property is not necessary for the Debtors' effective reorganization. Moreover, a review of the court's docket indicates that the Debtors have failed to file a proposed Chapter 11 Disclosure Statement or Chapter 11 Plan after a year in bankruptcy. In addition, the Debtors are delinquent on monthly operating reports. As a result, there is no *reasonable possibility* of a successful reorganization within a *reasonable amount of time* and Movant requests relief under 11 U.S.C. § 362(d)(2). *United Sav. Ass'n. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988).

WHEREFORE, Creditor prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay for all purposes allowed by law, the Note, the Mortgage, and applicable law, including but not limited to allowing Creditor (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce it remedies to foreclose upon and obtain possession of the Property;

2. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

3. That the 14-day stay described in Bankruptcy Rule 4001(a)(3) be waived;

4. For such other relief as the Court deems proper.

Dated: October 29, 2018

Respectfully submitted,

/s/ Jenelle C. Arnold
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

------------------------------------------------------------X

In Re:

Case No. 17-22226-rdd

Chapter 11

ADELINE OLMER SANTIAGO AKA ADELINE M. OLMER,

Debtor.

Exhibit 1

------------------------------------------------------------X

---

### RELIEF FROM STAY - REAL ESTATE AND
### COOPERATIVE APARTMENTS

I, _Lisa L Johnson, AVP Bankruptcy_
<NAME AND TITLE> OF _Fay Servicing, LLC as Servicer_
Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust
(HEREINAFTER, "MOVANT"), HEREBY DECLARE (OR CERTIIFY, VERIFY, OR STATE):

**BACKGROUND INFORMATION**

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS MOTION: 353 Sleepy Hollow Road, Briarcliff Manor, New York 10510-2138

2. LENDER NAME: Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust

3. DATE OF MORTGAGE: July 21, 2006

POST-PETITION PAYMENT ADDRESS: Fay Servicing, LLC, 3000 Kellway Drive, Ste 150, Carrollton, TX 75006

**DEBT/VALUE REPRESENTATIONS**

4. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF THE MOTION: $2,384,558.69
(NOTE: this amount may not be relied on as a "payoff" quotation.)

5.    MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT: $ 1,600,000.00

6.    SOURCE OF ESTIMATED VALUATION: Debtor(s) Bankruptcy Schedules A & D

### STATUS OF DEBT AS OF
### THE PETITION DATE

7.    TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $2,384,558.69

|  |  |  |
|---|---|---|
| F. | AMOUNT OF PRINCIPAL: | $1,459,365.61 |
| B. | AMOUNT OF INTEREST: | $376,156.51 |
| C. | AMOUNT OF ESCROW (TAXES AND INSURANCE): | $329,055.35 |
| D. | AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| E. | AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S)PRE-PETITION: | $0.00 |
| F. | AMOUNT OF PRE-PETITION LATE FEES, IF ANY BILLED TO DEBTOR(S): | $0.00 |

8.    CONTRACTUAL INTEREST RATE: 6.250% (If interest is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: __N/A__ .)

9.    PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE: $21,097.44

---

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF September 26, 2018)

10.   DATE LAST PAYMENT WAS RECEIVED: 4/01/2010

11.   ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING
      OF PETITION THROUGH PAYMENT DUE ON_____: _____.

12.   PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| 3/1/2017 | $7,236.45 | | | | | |
| 4/1/2017 | $7,236.45 | | | | | |
| 5/1/2017 | $7,236.45 | | | | | |
| 6/1/2017 | $7,236.45 | | | | | |
| 7/1/2017 | $7,236.45 | | | | | |
| 8/1/2017 | $12,471.67 | | | | | |
| 9/1/2017 | $12,782.02 | | | | | |
| 10/1/2017 | $12,782.02 | | | | | |
| 11/1/2017 | $12,782.02 | | | | | |
| 12/1/2017 | $12,782.02 | | | | | |
| 1/1/2018 | $12,782.02 | | | | | |
| 2/1/2018 | $12,782.02 | | | | | |
| 3/1/2018 | $12,823.32 | | | | | |
| 4/1/2018 | $12,823.32 | | | | | |
| 5/1/2018 | $12,823.32 | | | | | |
| 6/1/2018 | $12,823.32 | | | | | |
| 7/1/2018 | $12,823.32 | | | | | |
| 8/1/2018 | $12,823.32 | | | | | |
| 9/1/2018 | $13,436.59 | | | | | |

| TOTAL: | $215,722.55 | | | | | |
|--------|-------------|--|--|--|--|--|

13. AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $181.00

14. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $850.00

15. OTHER ATTORNEY'S' FEES BILLED TO DEBTOR POST-PETITION: $0.00

16. AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00

17. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

18. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

19. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

20. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.:

ESCROW ADVANCE: $103,099.88

RECOVERABLE BALANCE: $2,704.51

### REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit 2, 3, 4, 5 & 6)

(2) Copies of documents establishing proof of standing to bring this Motion. (Exhibit 2, 3, 4, 5 & 6.)

(3) Copies of document establishing that Movant's interest in the real property or cooperative apartment was perfected, For purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit 2, 3, 4 & 5.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATMION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANS ACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

## DECLARATION

I, _Lisa L Johnson, AVP, Bankruptcy_
\<NAME AND TITLE> OF _Fay Servicing, LLC as Servicer for_
Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust
\<NAME OF MOVANT>, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Tampa_ \<CITY/TOWN>, _FL_ \<STATE> ON THIS _26_ DAY OF _October_ \<MONTH), 2018 \<YEAR>.

NAME: _Lisa L Johnson_
TITLE: _AVP Bankruptcy_
MOVANT: _Fay Servicing LLC_
STREET ADDRESS: _3000 Kellway Dr, Ste 150_
CITY, STATE AND ZIP CODE: _Carrollton, TX 75006_

# ADJUSTABLE RATE NOTE

(LIBOR Six Month (As Published In *The Wall Street Journal*) • Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 23, 2004
[Date]

New York
[City]

New York
[State]

### 353 SLEEPY HOLLOW RD, BRIARCLIFF MANOR, NY 10510
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,450,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    3.000        %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make my monthly payment on the first day of each month beginning on ___September 1, 2004___.

Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If, on August 1, 2034___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  1000 Technology Drive, O' Fallon, MO  63304

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My initial monthly payments will be in the amount of U.S. $ 3,625.00_____ before the first Change Date as described in Section 4 of this Note and will consist only of the interest due on the unpaid balance of this Note.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 and 5 of this Note.

EXHIBIT 2

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of February, 2005 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two
                                                          percentage points ( 2.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For Change Dates occurring on or before the First Principal and Interest Payment Due Date, the Note Holder will determine the unpaid principal balance that I am expected to owe at the Change Date and the interest that would be charged for one month on that balance at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

For Change Dates occurring on or after the First Principal and Interest Payment Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 5.000 % or less than 2.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than Two percentage point(s) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than ( 9.000 %).

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) First Principal and Interest Payment Due Date

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the 121st monthly payment date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If the partial Prepayment is made during the period when my payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payment consists only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Init _____     Rev. 3/2004

EXHIBIT 2

## 11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

J. Mark Santiago     7/23/04 (Seal)
-Borrower

*(Sign Original Only)*

M84052 Six Month I/O Libor ARM Note        Page 4 of 4


EXHIBIT 2



| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 452410202 | 2005241-000080 | MTG |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
(THIS PAGE FORMS PART OF THE INSTRUMENT)
*** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

TYPE OF INSTRUMENT **MTG - MORTGAGE**
FEE PAGES 21          TOTAL PAGES 21

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $63.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| **TOTAL FEES PAID** | **$88.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE     09/07/2005
        TIME        11:55:00

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 07/24/2005 |
| MORTGAGE AMOUNT | $1,450,000.00 |
| EXEMPT | Yes |
| COUNTY TAX | $3,625.00 |
| YONKERS | $0.00 |
| BASIC | $7,250.00 |
| ADDITIONAL | $4,320.00 |
| SUBTOTAL | $15,195.00 |
| MTA | $3,625.00 |
| SPECIAL | $0.00 |
| **TOTAL PAID** | **$18,820.00** |

SERIAL NUMBER          CW22624
DWELLING               1-2 Family
THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:

TOWN OF OSSINING

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano*

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
CITIMORTGAGE INC
ATTN: DOCUMENT PROCESSING
PO BOX 790021
ST LOUIS, MO 63179

EXHIBIT 3

3255

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Prepared By:
CitiMortgage, Inc.
1000 Technology Drive
O' Fallon, MO 63304

----------[Space Above This Line For Recording Data]----------

# MORTGAGE

*Town of Ossining*
*Sect - 4*
*BlK - 20*
*lot - 5*

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated July 23, 2004
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." J. Mark Santiago and Adeline Olmer Santiago

whose address is 45 Woodfield Road Briarcliff Manor, NY 10510

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." CitiMortgage, Inc.

will be called "Lender." Lender is a corporation, or association which exists under the laws of
Delaware                                    Lender's address is 1000 Technology Drive, O'
Fallon, MO 63304

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01

-6(NY) (0005).02
Page 1 of 17          Initials: *Amos*
VMP MORTGAGE FORMS - (800)521-7291

PREMISES IMPROVED BY A ONE OR TWO FAMILY DWELLING

EXHIBIT 3

(D) "Note." The note signed by Borrower and dated  July 23, 2004                   , will be called
the "Note." The Note shows that I owe Lender One Million Four Hundred Fifty Thousand

                                        Dollars (U.S. $ 1,450,000.00            ) plus interest
and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by  August 1, 2034
(E) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."
(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."
(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider         [X] Other(s) [specify]
                                                               Schedule "A"

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."
(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."
(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.
(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the
Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

Initials                      Amos

Form 3033 1/01

EXHIBIT 3

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 353 SLEEPY HOLLOW RD

[Street]

BRIARCLIFF MANOR [City, Town or Village] , New York 10510- [Zip Code].

This Property is in       WESTCHESTER                County. It has the following legal description: See Legal Description Attached Hereto And Made A Part Hereof

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Initials: *Amos*

Form 3033 1/01

-6(NY) (0005).03

EXHIBIT 3

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

EXHIBIT 3

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: 

*Amos*

Form 3033 1/01

EXHIBIT 3

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments and Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials: Amos

Form 3033 1/01

EXHIBIT 3

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Initials: Amos

Page 7 of 17    Form 3033 1/01

EXHIBIT 3

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials _____ Amos

Form 3033 1/01

EXHIBIT 3

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect Its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

Initials:

Amos

Form 3033 1/01

EXHIBIT 3

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Initials ___ *AmoS*

Page 10 of 17

Form 3033 1/01

EXHIBIT 3

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initial

ℳos
Form 3033 1/01

EXHIBIT 3

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials ___ _Amos_

Form 3033 1/01

EXHIBIT 3

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

Page 13 of 17

Initials

*moS*

Form 3033 1/01

EXHIBIT 3

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

Initials

*Amos*

Form 3033 1/01

EXHIBIT 3

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

      (1) The promise or agreement that I failed to keep or the default that has occurred;

      (2) The action that I must take to correct that default;

      (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

      (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

      (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

      (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

      This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

      This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

      This Security Instrument does not cover real property improved as described above.

Amos

Initials

Form 3033 1/01

EXHIBIT 3

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    J. Mark Santiago        -Borrower

_____    _____ (Seal)
                                    Adeline Olmer Santiago  -Borrower

Form 3033 1/01

EXHIBIT 3

STATE OF NEW YORK,     westchester     County ss:

On the 23 day of July 2004 before me, the undersigned, a notary
public in and for said state, personally appeared J. MARK SANTIAGO + Adeline Olmer Santiago

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Esther Becher_

Notary Public

Tax Map Information:

ESTHER M. BECHER
Notary Public, State of New York
No. 01BE6106801
Qualified in Rockland County
Commission Expires 03/15/2008

Amos

Form 3033 1/01

EXHIBIT 3

## SCHEDULE A

THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Briarcliff Manor, Town of Ossinging, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at a monument at the intersection of the easterly line of the new Sleepy Hollow Road with the northerly line of Long Hill Road, said monument being the southwesterly corner of the herein described premises;

RUNNING THENCE northerly along the easterly side of Sleepy Hollow Road as the same bears to the left along the are of a circle having a radius of 785.42 feet a, a distance along said curve of 124.34 feet to a monument;

THENCE still along the easterly side of Sleepy Hollow Road, north 7degrees 15 minutes 20 seconds west 122.55 feet to a cross on a rock in the stone wall and to the property of land of John J. Shea;

THENCE RUNNING the following courses and distances along land of Shea north 82 degrees 01 minutes 30 seconds east 55.67 feet, north 81 degrees 25 minutes east 187.80 feet to the northeast corner of the herein described premises;

THENCE south 27 degrees 57 minutes 50 seconds east 51.74 feet; south 24 degrees 14 minutes east 43.01 feet; south 23 degrees 01 minutes east 22.56 feet; south 24 degrees 58 minutes 50 seconds east 118.93 feet to the northerly line of Long Hill Road; and

THENCE along the north line of Long Hill Road the following 7 course sand distance;
South 64 degrees 13 minutes west 18.35 feet;
South 71 degrees 32 minutes 50 seconds west 30.23 feet;
South 77 degrees 43 minutes 50 seconds west 54.86 feet;
South 81 degrees 05 minutes 20 seconds west 43.32 feet;
South 80 degrees 03 minutes 40 seconds west 99.28 feet;
South 79 degrees 20 minutes 10 seconds west 52.90 feet;
South 80 degrees 05 minutes 40 seconds west 29.47 feet to the corner, at the point or place of BEGINNING.

Amos

EXHIBIT 3

"CONSOLIDATED ADJUSTABLE RATE NOTE – This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note "

# InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE

( One-Year LIBOR Index (As Published in *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY

| July 21, 2006 | Valley Stream | New York |
|---|---|---|
| [Date] | [City] | [State] |

353 SLEEPY HOLLOW ROAD, BRIARCLIFF MNR, NY 10510-2138
[Property Address]

## 1 BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S $ 1,460,000 00            (this amount is called "Principal"), plus interest, to the order of Lender Lender is CitiMortgage, Inc

I will make all payments under this Note in the form of cash, check or money order

I understand that Lender may transfer this Note Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

## 2 INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of             6 250 %  The interest rate I will pay may change in accordance with Section 4 of this Note

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note

## 3 PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on     September 1, 2006            Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note. my payment will consist only of the interest due on the unpaid principal balance of this Note Thereafter, I will pay principal and interest by making a payment every month as provided below

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal If, on August 1, 2036            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240

or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U S  $ 7,604 17            before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date The Note Holder will notify me prior to the date of change in monthly payment

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - WSJ ONE-YEAR LIBOR INDEX - Single Family - Fannie Mae Uniform Instrument



EXHIBIT 4

## 4    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of August, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date "

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index The "Index" is the average of interbank offered rates for one-year U S dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information The Note Holder will give me notice of this choice

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two & 25/100 percentage points (                    2 250            %) to the Current Index The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments The result of this calculation will be the new amount of my monthly payment

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                    11 250  % or less than                    2 250  %  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months  My interest rate will never be greater than                    11 250  %

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

### (F)  Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

### (G)  Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date

## 5    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due  A payment of principal only is known as a "Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note  If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes  If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest  If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest rate increase

## 6    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund

Form 3530 1/01
Initials
CitiMortgage 06/17/2008 VI

EXHIBIT 4

by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment

## 7    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be                    2 000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter  I will pay this late charge promptly but only once on each late payment

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees

## 8    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

## 9    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

## 10   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 11   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions read as follows

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows

Form 3530  11/04
Initials
CitiMortgage 06/10/2006

EXHIBIT 4

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full  Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower


Form 3530 11/01
Initials
CitiMortgage 06/17/2006 V1

EXHIBIT 4

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
J. Mark Santiago                    -Borrower

_____

_____

*(Sign Original Only)*



Form 3530  11/01
CitiMortgage 06/17/2006 VI

EXHIBIT 4



Control Number
462420860

Instrument Type
**RAG**



WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)
\*\*\* DO NOT REMOVE \*\*\*

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: <u>RAG - REGISTERED AGREEMENT</u>
FEE PAGES: 38          TOTAL PAGES: 38

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $114.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $1.00 |
| MISCELLANEOUS | $5.00 |
| **TOTAL FEES PAID** | **$145.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE: 9/19/2006
TIME: 12:22:00

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 7/21/2006 |
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| COUNTY TAX | $0.00 |
| YONKERS TAX | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| **TOTAL PAID** | **$0.00** |

SERIAL NUMBER: CX31391
DWELLING: 1-6 Family

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF OSSINING

WITNESS MY HAND AND OFFICIAL SEAL

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
CITIMORTGAGE INC
PO BOX 790021

ST LOUIS, MO 63179

EXHIBIT 5

37p
OSS
1-2

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Prepared By:
CitiMortgage, Inc.
1000 Technology Drive
O' Fallon, MO 63368-2240

——— [Space Above This Line For Recording Data] ———

## CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

WORDS USED OFTEN IN THIS DOCUMENT

(A) "Agreement." This document, which is dated July 21, 2006            and
exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower." J. MARK SANTIAGO, and ADELINE OLMER SANTIAGO, Tenants in
Entirety

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 353  Sleepy  Hollow  Rd,
Briarcliff Manor, NY 10510

(C) "Lender." CitiMortgage, Inc.

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists
under the laws of  New York                                    , Lender's
address is  1000 Technology Drive, O' Fallon, MO  63368-2240

(D) "Mortgages." The mortgages, deeds of trust, or other security instruments and any additional
security instruments and related agreements (such as assignments, extensions, modifications, or
consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and
who is entitled to receive the payments I agree to make under this Agreement may be called the "Note
Holder."

(F) "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured
by the Mortgages, will be called the "Notes."

Section:            Block:            Lot:            Unit:

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT - Single Family -      Form 3172  1/01
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                             (rev. 5/01)



VMP-850R(NY) (0506)
Page 1 of 7                Initials
VMP Mortgage Solutions, Inc. (800) 521-7291

EXHIBIT 5

(G) "Property." The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

**353 SLEEPY HOLLOW ROAD**
[Street]

BRIARCLIFF MNR
[City]

Westchester
[County]

NY 10510-2138
[State and Zip Code]

I promise and I agree with Lender as follows:

## I. BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 1,460,000.00 of this amount, U.S. $ 10,000.00 was advanced to me (or for my account) immediately prior to this consolidation.

## II. AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

## III. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

## IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

Initials: _[signature]_

VMP®-850R(NY) (0506)

Page 2 of 7

Form 3172 1/01 (rev. 5/01)
CitiMortgage 08/17/2006 V1

**EXHIBIT 5**

## V. NO SET-OFF, DEFENSES

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

## VI. BORROWER'S INTEREST IN THE PROPERTY

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

## VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

## VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

## IX. LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

## X. TYPE OF PROPERTY

Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

Initials: _A Amos_

CitiMortgage 06/17/2006 V1

EXHIBIT 5

By signing this Agreement, Lender and I agree to all of the above.

Notwithstanding Paragraph VIII, Lender acknowledges that Adeline Olmer Santiago will not be personally liable for repayment of the loan but is signing below to grant a security interest in the Property.

CitiMortgage, Inc.
_____
- Lender

By:_____

Aaron Katsman

(Seal)
-Borrower
J. Mark Santiago

(Seal)
-Borrower
Adeline Olmer Santiago

EXHIBIT 5

STATE OF NEW YORK, _New York_       County ss:

On the _21_ day of _July_ _2006_ before me, the undersigned, a notary public in and for said state, personally appeared

_J. Mark Santiago_
_Adeline Olmer Santiago_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

LESLIE RAYMOND
Notary Public, State of New York
No. 01RA6103946
Qualified in Nassau County
Commission Expires January 12, 20__08__

Notary Public _Leslie Raymond_

STATE OF NEW YORK, _Nassau_       County ss:

On the _21_ day of _July_ _2006_ before me, the undersigned, a notary public in and for said state, personally appeared

_Aaron Katsman_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public _Wendy Lazrus_

WENDY J. LAZRUS
Notary Public, State of New York
No. 01LA6031744
Qualified in Nassau County
Commission Expires October 12, 20__09__

Tax Map Information:

VMP -850R(NY) (0506)

Page 5 of 7

Form 3172 1/01 (rev. 5/01)
CitiMortgage 06/17/2006 V1

EXHIBIT 5

## Exhibit A
### (List of Mortgages, Notes and Agreements)

(1)The mortgage given by J. Mark Santiago and Adeline Olmer Santiago to and dated July 21, 2006 in favor of **CitiMortgage, Inc.** securing the original principal amount of U.S. $10,000.00. This Mortgage *is on a Fannie Mae/ Freddie Mac Security Instrument* and (was recorded on ~~in the County Clerk's office of~~ ~~, State of New York at Book/Liber , Page~~ will be recorded together with this Agreement. (Strike and complete as appropriate.) Which mortgage secures the note dated 07/21/2006 for $10,000.00.

(2) The mortgage given by J. Mark Santiago and Adeline Olmer Santiago to CitiMortgage, Inc. in the amount of $1,450,000.00, dated 07/23/2004, recorded 09/07/2005, in Control number 452410202 in Westchester County Records. Which mortgage secures the note dated 07/23/2004 for $1,450,000.00. At which time all mortgage taxes and all mortgage recording taxes were paid in the amount of $18,820.00. The outstanding principal balance is $1,450,000.00.

(3) ~~The Mortgage given by~~
~~and dated~~ ~~in favor of~~
~~securing the original principal amount of U.S. $~~
~~The Mortgage was recorded on~~

Initials *Mos*

Page 6 of 7

Form 3172 1/01 (rev. 5/01)

EXHIBIT 5

of ———————, State of ————————————————————————
at ——————————————————————————————————————————
At this date, the unpaid principal balance secured by this Mortgage is U.S. $
(Strike if not applicable)

Initials [signature] Form 3172 1/01 (rev. 5/01)

EXHIBIT 5



ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Briarcliff Manor, Town of Ossining, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at a monument at the intersection of the easterly line of the new Sleepy Hollow Road with the northerly line of Long Hill Road, said monument being the southwesterly corner of the herein described premises;

RUNNING THENCE northerly along the easterly side of Sleepy Hollow Road as the same bears to the left along the arc of a circle having a radius of 785.42 feet, a distance along said curve of 124.34 feet to a monument;

THENCE still along the easterly side of Sleepy Hollow Road, North 7 degrees 15 minutes 20 seconds West 122.55 feet to a cross on a rock in the stone wall and to the property of land of John J. Shea;

THENCE the following courses and distances along land of Shea North 82 degrees 01 minutes 30 seconds East 55.67 feet, North 81 degrees 25 minutes East 187.80 feet to the northeast corner of the herein described premises;

THENCE South 27 degrees 57 minutes 50 seconds East 51.74 feet, South 24 degrees 14 minutes East 43.01 feet, South 23 degrees 01 minutes East 22.56 feet, South 24 degrees 58 minutes 50 seconds East 118.93 feet to the northerly line of Long Hill Road; and

THENCE along the North line of Long Hill Road the following 7 courses and distance:

South 64 degrees 13 minutes West 18.35 feet;

South 71 degrees 32 minutes 50 seconds West 30.23 feet;

South 77 degrees 43 minutes 50 seconds West 54.86 feet;

South 81 degrees 05 minutes 20 seconds West 43.32 feet;

South 80 degrees 03 minutes 40 seconds West 99.28 feet;

South 79 degrees 20 minutes 10 seconds West 52.90 feet;

South 80 degrees 05 minutes 40 seconds West 29.47 feet to the corner, at the point or place of BEGINNING.

EXHIBIT 5

# NOTE

July 21, 2006                    Valley Stream                    New York
[Date]                           [City]                           [State]

### 353 SLEEPY HOLLOW ROAD, BRIARCLIFF MNR, NY 10510-2138
[Property Address]

**1  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U S  $ 10,000 00        (this amount is called "Principal"),
plus interest, to the order of the Lender The Lender is  CitiMortgage, Inc

I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder "

**2  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly
rate of     6 250        %

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note

**3  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month

I will make my monthly payment on the First        day of each month beginning on  September, 2006        I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal  If, on  August 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date "

I will make my monthly payments at  1000 Technology Drive, O' Fallon, MO  63368-2240

or at a different place if required by the Note Holder

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U S  $ 61 57

**4  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a
"Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes

NEW YORK FIXED RATE NOTE Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for NY Consolidated Note

-850NGAP(NY)          Form 3233 1/01
VMP MORTGAGE FORMS  (800)521 7291

Page 1 of 3          Initials



CitiMortgage 00/77/2006

EXHIBIT 6

## 5 LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment

## 6 BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15       calendar days after the date it is due, I will pay a late charge to the Note Holder The amount of the charge will be  2 000        % of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees

## 7 GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

## 8 OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

## 9 WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid



Form 3233  1/01
Initials
CitiMortgage 06/17/2006 V1

EXHIBIT 6

10  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions are described as follows

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement  The notice will give me at least 30 days to make the required payment  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____  (Seal)
J  Mark Santiago                          -Borrower

*(Sign Original Only)*



-850NGAP(NY)

Form 3233 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 6



Control Number
**462420855**

Instrument Type
**MTG**



WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)
*** DO NOT REMOVE ***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:
TYPE OF INSTRUMENT: <u>MTG - MORTGAGE</u>
FEE PAGES:  26        TOTAL PAGES:  26

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $78.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| **TOTAL FEES PAID** | **$103.00** |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

**RECORDING DATE: 9/19/2006**
**TIME: 12:22:00**

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 7/21/2006 |
| MORTGAGE AMOUNT | $10,000.00 |
| EXEMPT | Yes |
| COUNTY TAX | $25.00 |
| YONKERS TAX | $0.00 |
| BASIC | $50.00 |
| ADDITIONAL | $0.00 |
| MTA | $25.00 |
| SPECIAL | $0.00 |
| **TOTAL PAID** | **$100.00** |

**SERIAL NUMBER: CX31389**
**DWELLING: 1-2 Family**

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF OSSINING

WITNESS MY HAND AND OFFICIAL SEAL

*Timothy C. Idoni*

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

Record & Return to:
CITIMORTGAGE INC
PO BOX 3790021

ST LOUIS, MO 63179

EXHIBIT 7

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Prepared By:
CitiMortgage, Inc.
1000 Technology Drive
O' Fallon, MO 63368-2240

[Space Above This Line For Recording Data]

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated July 21, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." J. MARK SANTIAGO, and ADELINE OLMER SANTIAGO, Tenants in Entirety

whose address is 353 Sleepy Hollow Rd Briarcliff Manor, NY 10510

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." CitiMortgage, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
New York                                             . Lender's address is 1000    Technology    Drive,    O'
Fallon, MO 63368-2240

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3033 1/01

VMP-8(NY) (0005).03
Page 1 of 17                Initials /s/ Amos
VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 7

(D) "Note." The note signed by Borrower and dated July 21, 2006 , will be called
the "Note." The Note shows that I owe Lender Ten Thousand

Dollars (U.S. $10,000.00 ) plus interest
and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by August 1, 2036

(E) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Schedule "A" |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the
Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

Initials: [signature]

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 353 SLEEPY HOLLOW ROAD

[Street]

BRIARCLIFF MNR            [City, Town or Village] , New York 10510-2138    [Zip Code].
This Property is in     WESTCHESTER               County. It has the following legal
description: see attached

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

Initials:

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

EXHIBIT 7

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials.

Form 3033 1/01

CitiMortgage 06/17/2006 V1

EXHIBIT 7

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a .lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments and Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials: *mos*

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Initials Amos

Page 7 of 17

Form 3033 1/01
CitiMortgage 06/17/2008 V1

EXHIBIT 7

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Initials: *Amos*

Form 3033 1/01
CitiMortgage 06/17/2008 V1

EXHIBIT 7

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

Initials: _Amos_

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Initials: *mos*

Form 3033 1/01
CitiMortgage 06/17/2008 V1

EXHIBIT 7

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initials *Amos*

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials: _mos_

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

   (a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

   (b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

   (c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

   (d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

Initials: _____

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

Initials: ~~Amos~~

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

Initials *(signature)* Amos

Page 15 of 17

Form 3033 1/01
CitiMortgage 06/17/2008 V1

EXHIBIT 7

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____                                                          (Seal)
                                                                                -Borrower
                              J. Mark Santiago

                                                                                (Seal)
_____                                                         -Borrower
                              Adeline Olmer Santiago

Form 3033 1/01
Citimortgage 06/17/2005 V1

EXHIBIT 7

STATE OF NEW YORK,　New York　County ss:

On the 21 day of July 2006 before me, the undersigned, a notary public in and for said state, personally appeared

J. Mark Santiago
Adeline Olmer Santiago

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_Leslie Raymond_
Notary Public

Tax Map Information:

LESLIE RAYMOND
Notary Public, State of New York
No. 01RA6103946
Qualified in Nassau County
Commission Expires January 12, 20 08

Initials: _Amos_

Form 3033 1/01
CitiMortgage 06/17/2006 V1

EXHIBIT 7

Fill in this information to identify your case and this filing:

| | |
|---|---|
| Debtor 1 | **Adeline Olmer Santiago** |
| | First Name      Middle Name      Last Name |
| Debtor 2 (Spouse, if filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

**1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
■ Yes. Where is the property?

**1.1**

| | |
|---|---|
| **353 Sleepy Hollow Rd** | **What is the property?** Check all that apply |
| Street address, if available, or other description | ■ Single-family home |
| | ☐ Duplex or multi-unit building |
| | ☐ Condominium or cooperative |
| **Briarcliff**   **NY**   **10510-2138** | ☐ Manufactured or mobile home |
| City    State    ZIP Code | ☐ Land |
| | ☐ Investment property |
| | ☐ Timeshare |
| | ☐ Other _____ |
| County | **Who has an interest in the property?** Check one |
| | ☐ Debtor 1 only |
| | ☐ Debtor 2 only |
| | ☐ Debtor 1 and Debtor 2 only |
| | ■ At least one of the debtors and another |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,600,000.00** | **$800,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Tenancy by the Entirety**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**5,350 Sq. Ft. on 1.58 acres, with pool and 3 car garage**

**2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................................=>**   | **$800,000.00** |

**Part 2:**   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No
☐ Yes

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

EXHIBIT 8

Debtor 1   **Santiago, Adeline Olmer**                                   Case number *(if known)* _____

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages
    you have attached for Part 2. Write that number here.........................................................=>           **$0.00**

**Part 3:** Describe Your Personal and  Household Items

Do you own or have any legal or equitable interest in any of the following items?         Current value of the
                                                                                          portion you own?
                                                                                          Do not deduct secured
                                                                                          claims or exemptions.

**6. Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| Home Furnishings, kitchen and dining equipment/items, household goods | $2,500.00 |
|---|---|
| Art and decorative pieces | $1,200.00 |

**7. Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

| TVs, smart phones, entertainment center, computer | $750.00 |
|---|---|

**8. Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other
   collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical
   instruments
   ■ No
   ☐ Yes. Describe.....

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ■ No
   ☐ Yes. Describe.....

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes. Describe.....

| Clothing, wearing apparel, shoes/boots and accessories | $2,500.00 |
|---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes. Describe.....

| Diamond ring, bracelets, watches and broaches | $2,000.00 |
|---|---|

EXHIBIT 8

Debtor 1   **Santiago, Adeline Olmer**      Case number *(if known)*    

**13. Non-farm animals**
 *Examples:* Dogs, cats, birds, horses
 ☐ No
 ■ Yes. Describe.....

| Cat and Dog | unknown |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**
 ■ No
 ☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for
 Part 3. Write that number here ..........................................................................  **$8,950.00**

---

**Part 4:** **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?    **Current value of the portion you own?**
                              Do not deduct secured claims or exemptions.

**16. Cash**
 *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
 ☐ No
 ■ Yes.............................................................................

                            **Cash on hand**   **$200.00**

**17. Deposits of money**
 *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
   institutions. If you have multiple accounts with the same institution, list each.
 ☐ No
 ■ Yes.........................          Institution name:

    **17.1.** **Checking Account** **Citibank**          **$500.00**

**18. Bonds, mutual funds, or publicly traded stocks**
 *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
 ■ No
 ☐ Yes.................      Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
 ☐ No
 ■ Yes. Give specific information about them...................

| Name of entity: | % of ownership: | |
|---|---|---|
| **International CoSourcing Group, a partnership** **(Husband's operating business)** | **5.00** % | **$500.00** |
| **Adeline Olmer LLC (French-Secrets.com)** | **100.00** % | **$1,000.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
 *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
 *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
 ■ No
 ☐ Yes. Give specific information about them
      Issuer name:

**21. Retirement or pension accounts**
 *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
 ☐ No
 ■ Yes. List each account separately.

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

EXHIBIT 8

Debtor 1    **Santiago, Adeline Olmer**                                                    Case number *(if known)*

| Type of account: | Institution name: | |
| --- | --- | --- |
| **IRA** | **TD Bank** | **$1,000.00** |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. .....................                              Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**28.  Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.
           Company name:                              Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No

Official Form 106A/B                          Schedule A/B: Property                                      page 4

EXHIBIT 8

Debtor 1    **Santiago, Adeline Olmer** _____    Case number *(if known)* _____

☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................    | $3,200.00 |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1. |

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes. Go to line 38.

| Part 6 | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in. |
|        | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes. Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ...............................    | $0.00 |

| Part 8: | List the Totals of Each Part of this Form |

55. **Part 1: Total real estate, line 2** ..................................................................................................    | $800,000.00 |
56. **Part 2: Total vehicles, line 5**    | $0.00 |
57. **Part 3: Total personal and household items, line 15**    | $8,950.00 |
58. **Part 4: Total financial assets, line 36**    | $3,200.00 |
59. **Part 5: Total business-related property, line 45**    | $0.00 |
60. **Part 6: Total farm- and fishing-related property, line 52**    | $0.00 |
61. **Part 7: Total other property not listed, line 54**    +    | $0.00 |

62. **Total personal property. Add lines 56 through 61...**    | $12,150.00 |    Copy personal property total    | $12,150.00 |

63. **Total of all property on Schedule A/B. Add line 55 + line 62**    | $812,150.00 |

Official Form 106A/B                          Schedule A/B: Property                                    page 5

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

                                                                                        EXHIBIT 8

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Adeline Olmer Santiago** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:     Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ■ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>Check only one box for each exemption. | | Specific laws that allow exemption |
|---|---|---|---|---|
| **353 Sleepy Hollow Rd Briarcliff NY, 10510-2138**<br>Line from *Schedule A/B*: **1.1** | **$800,000.00** | ■ | $1.00 | **11 USC § 522(d)(1)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Home Furnishings, kitchen and dining equipment/items, household goods**<br>Line from *Schedule A/B*: **6.1** | **$2,500.00** | ■ | $2,500.00 | **11 USC § 522(d)(3)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Art and decorative pieces**<br>Line from *Schedule A/B*: **6.2** | **$1,200.00** | ■ | $1,200.00 | **11 USC § 522(d)(3)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **TVs, smart phones, entertainment center, computer**<br>Line from *Schedule A/B*: **7.1** | **$750.00** | ■ | $750.00 | **11 USC § 522(d)(3)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| **Clothing, wearing apparel, shoes/boots and accessories**<br>Line from *Schedule A/B*: **11.1** | **$2,500.00** | ■ | $2,500.00 | **11 USC § 522(d)(3)** |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

Official Form 106C                      Schedule C: The Property You Claim as Exempt                      page 1 of 2

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

EXHIBIT 8

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Diamond ring, bracelets, watches and broaches**<br>Line from *Schedule A/B*: **12.1** | **$2,000.00** | ■      **$1,600.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(4)** |
| **Diamond ring, bracelets, watches and broaches**<br>Line from *Schedule A/B*: **12.1** | **$2,000.00** | ■      **$400.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(5)** |
| **Cash on hand**<br>Line from *Schedule A/B*: **16.1** | **$200.00** | ■      **$200.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(5)** |
| **Citibank**<br>Line from *Schedule A/B*: **17.1** | **$500.00** | ■      **$500.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(5)** |
| **International CoSourcing Group, a partnership**<br>**(Husband's operating business)**<br>Line from *Schedule A/B*: **19.1** | **$500.00** | ■      **$500.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(5)** |
| **Adeline Olmer LLC**<br>**(French-Secrets.com)**<br>Line from *Schedule A/B*: **19.2** | **$1,000.00** | ■      **$1,000.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(5)** |
| **TD Bank**<br>Line from *Schedule A/B*: **21.1** | **$1,000.00** | ■      **$1,000.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 USC § 522(d)(12)** |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

Software Copyright (c) 1996-2016 CIN Group - www.cincompass.com

EXHIBIT 8

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Adeline Olmer Santiago** | |
| | First Name   Middle Name   Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name   Middle Name   Last Name | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

    ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

    ☑ Yes. Fill in all of the information below.

### Part 1:   List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim | Unsecured portion If any |

| 2.1 **Citimortgage, Inc.** | Describe the property that secures the claim: | **$2,100,000.00** | **$1,600,000.00** | **$500,000.00** |
|---|---|---|---|---|

**Citimortgage, Inc.**
Creditor's Name

Describe the property that secures the claim:
**353 Sleepy Hollow Rd, Briarcliff, NY 10510-2138**
**5,350 Sq. Ft. on 1.58 acres, with pool and 3 car garage**

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**PO Box 9438**
**Gaithersburg, MD 20898**
Number, Street, City, State & Zip Code

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Mortgage**

Date debt was incurred _____   Last 4 digits of account number   **8482**

| 2.2 **JP Morgan Chase** | Describe the property that secures the claim: | **unknown** | **$0.00** | **$0.00** |
|---|---|---|---|---|

**JP Morgan Chase**
Creditor's Name

**270 Park Ave**
**New York, NY 10017-2014**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

Who owes the debt? Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   **Second Mortgage**

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

EXHIBIT 8

Debtor 1   **Adeline Olmer Santiago**                                    Case number (if know) _____
           First Name      Middle Name         Last Name

Date debt was incurred _____    Last 4 digits of account number _____

| 2.3 | **NYS Dept of Tax and Finance** | Describe the property that secures the claim: | $1,934.00 | $0.00 | $1,934.00 |

Creditor's Name

**Bankruptcy Section**
**Albany, NY 12205**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right of offset) _____

Date debt was incurred _____    Last 4 digits of account number   **0049**   _____

---

Add the dollar value of your entries in Column A on this page. Write that number here:   **$2,101,934.00**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:   **$2,101,934.00**

**Part 2:   List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐   Name, Number, Street, City, State & Zip Code
**Adam J. Eitman Bailey PC**
**120 Broadway Fl 17**
**New York, NY 10271-1797**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number   **8482**

☐   Name, Number, Street, City, State & Zip Code
**BSI Financial Services**
**7500 Old Georgetown Rd # 1350**
**Bethesda, MD 20814-6240**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number   **8482**

☐   Name, Number, Street, City, State & Zip Code
**Wilmington Savings Fund Society, FSB, DB**
**184 North South Street**
**Wilmington, Ohio**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number   **8482**

---

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 2 of 2

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

EXHIBIT 8

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

------------------------------------------------------------X

In Re:

ADELINE OLMER SANTIAGO AKA ADELINE M. OLMER,

                      Debtor.

------------------------------------------------------------X

Case No. 17-22226-rdd

Chapter 11

**ORDER LIFTING THE**
**AUTOMATIC STAY**

        Upon reading the filing the Notice of Motion dated October 26, 2018, the Affirmation of

Jenelle C. Arnold, Esq., dated October 26, 2018, and the exhibits annexed thereto on behalf of

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for

Hilldale Trust ("Creditor"), by it's attorneys Aldridge Pite, LLP, for an Order pursuant of 11 U.S.C.

362(d)(1) and (2) granting relief from the automatic stay to foreclose the mortgage it holds on the

property located at 353 Sleepy Hollow Road, Briarcliff Manor, New York 10510-2138, and sufficient

cause appearing therefore; it is

        **ORDERED,** that automatic stay is hereby modified pursuant to 11 U.S.C. 362 (d) (1) and (2)

to allow Creditor to foreclose the mortgage it holds on the Property, and it is further,

**ORDERED,** that the co-debtor stay under 11 U.S.C. 1301 is terminated;

**ORDERED,** that the 14 day stay imposed by FRBP 4001(a)(3) is hereby waived, and it is further

**ORDERED,** that the Trustee shall retain any and all interest the Debtor's/Debtors' estate may have in any surplus monies from a foreclosure sale of the Real Property.

### ###

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------------X     Case No. 17-22226-rdd

In Re:
                                                                     Chapter 11

ADELINE OLMER SANTIAGO AKA ADELINE M. OLMER,

                    Debtor.
---------------------------------------------------------------X

## **FRCP 55 AFFIDAVIT**

As attorney for creditor admitted to practice before this Court, I represent that upon
information and belief, the Debtor is not an infant, incompetent, or in the military.

Dated: October 29, 2018

                              /s/ Jenelle C. Arnold
                              Jenelle C. Arnold, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

------------------------------------------------------------X          Case No. 17-22226-rdd

In Re:

ADELINE OLMER SANTIAGO AKA ADELINE M. OLMER,          Chapter 11

                    Debtor.                                            **CERTIFICATE OF SERVICE**

------------------------------------------------------------X

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the Notice of Motion, Affidavit In Support of Motion for Relief from Stay FRCP55 Affidavit, and a Proposed Order Lifting Stay was mailed by U.S. Mail on October 29, 2018 to the parties listed below:

Adeline Olmer Santiago
353 Sleepy Hollow Rd
Briarcliff, NY 10510-2138

J. Mark Santiago
353 Sleepy Hollow Rd
Briarcliff, NY 10510-2138

H. Bruce Bronson, Jr.
Bronson Law Offices, P.C.
480 Mamaroneck Avenue
Harrison, NY 10528-0023
ecf@bronsonlaw.net

Department of Justice
Southern District of New York (White Plains)
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

Largest Creditors:
Citibankna
PO Box 769006
San Antonio, TX 78245-9006

ConEdison
Cooper Station
New York, NY 10276

Eliza Pertz
9 Hidden Green Ln
Larchmont, NY 10538-1117

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Lisa Martinez
2927 Scott Pl
Bronx, NY 10465-2315

Nancy Duddy
PO Box 1173
Monroe, NY 10949-8173

NYS Dept of Tax and Finance
Bankruptcy Section
Albany, NY 12205

Verizon
PO Box 4003
Acworth, GA 30101-9004

Respectfully submitted,

/s/ Jenelle C. Arnold
By: Jenelle C. Arnold
4375 Jutland Drive, Suite 200
San Diego, CA 92177-0933
(858) 750-7600